**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA**

ELIZABETH PAULEY
13548 Feather Sound Cr. W #1711
Clearwater, FL 33762

                    Plaintiff,

      vs.

NATIONAL CREDIT SYSTEMS, INC.
1775 The Exchange SE, Suite 300
Atlanta, GA 30339,
     **Serve on**:
C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

and

EXPERIAN INFORMATION
SOLUTIONS, INC.
505 City Parkway West
Orange County, CA 92668
     **Serve on**:
     C T Corporation System
     1200 South Pine Island Road
     Plantation, FL 33324

and

EQUIFAX INFORMATION SERVICES,
LLC
1550 Peachtree Street, NW
Atlanta, GA 30309
     **Serve on:**
Corporation Service Company
1201 Hays Street

Case No.:

Tallahassee, FL 32301-2525

Defendants.

## COMPLAINT AND DEMAND FOR A JURY TRIAL

COMES NOW Plaintiff, Elizabeth Pauley, by and through undersigned counsel, Joseph S. Mack, of the Law Offices of Joseph S. Mack and Joseph M. Sternberg, of Landers & Sternberg PLLC, and files this Complaint against Defendants, National Credit Systems, Inc. ("NCS"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax"), and in support hereof states as follows:

### INTRODUCTION

1. Plaintiff, an elderly disabled veteran, is wrongfully being pursued for an alleged rental debt of almost $24,000.00, representing one years' worth of rent for an apartment she never lived in, never agreed to move into, and for which someone else was renting during the same year for which Plaintiff is being pursued. Defendants are reporting this illegal double-dipping on Plaintiff's credit reports, preventing her from being able to buy a home or move to a new apartment. Plaintiff disputed this false reporting on multiple occasions with Defendants Experian and Equifax, triggering a requirement under the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681 *et. seq.*, for Defendants to conduct reasonable investigations into whether Plaintiff owed the alleged debt, which they

2

failed to do. Instead, they left the derogatory information on Plaintiff's credit reports, damaging her credit and financial reputation. Indeed, as of the filing of this lawsuit, Defendants continue to report the false debt. This lawsuit follows as Plaintiff's only avenue to remove this false information from her credit reports and stop her ongoing damages.

## PARTIES

2.      Plaintiff Elizabeth Pauley is a Florida resident.

3.      Defendant NCS is a Georgia corporation registered to do business in Florida.  It is a furnisher as defined in the FCRA.

4.      Defendant Experian is an Ohio corporation registered to do business in Florida.

5.      Defendant Equifax is a Georgia Limited Liability Company registered to do business in Florida.

6.      Defendants Experian and Equifax are consumer reporting agencies under 15 U.S.C. §1681a(f).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter because the operative events in this Complaint took place in Pinellas County, Florida and the Defendants regularly transact business in Florida.

8.      Plaintiff brings claims against Defendants pursuant to the FCRA. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1343.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b).

**STATEMENTS OF FACT**

10.     On December 6, 2024, Plaintiff visited the leasing office at Bayside Arbors Apartments ("Bayside Arbors") during her search for a new apartment to move after her then-existing lease was ending at the end of February 2025.  The leasing staff at Bayside Arbors had Plaintiff fill out an application and an application fee, as well as put her name on a blank form lease.  Plaintiff expressed discomfort to the staff about signing paperwork and told them she was having vision problems and still had questions about the total monthly costs it would be for her to rent an apartment at Bayside Arbors, but she was assured by the leasing staff that she was not committing to lease an apartment at that time and that she was just putting in a rental application.

11.     Later that same day, Bayside Arbors informed Plaintiff via text message that it had approved Plaintiff's application and that she could move into Apartment 6-103 (the "Apartment") on February 27, 2025.  Plaintiff sought additional information about the floor plan for the Apartment and the total monthly cost with utilities for the Apartment.  Bayside Arbors provided some responses, but Plaintiff still had numerous questions and concerns regarding utilities that were not addressed.

12.    By December 26, 2024, Plaintiff had informed Bayside Arbors that she was choosing to move elsewhere and would not be moving into the Apartment. Bayside Arbors responded claiming that Plaintiff had signed a lease for the Apartment when she applied, and that she was obligated to move in. After having assured Plaintiff that she was not committing to rent at Bayside Arbors by applying, Bayside Arbors was now taking the opposite position, saying that by writing her name on a blank lease when she put in an application, she had been agreeing to rent whatever apartment she was assigned.

13.    Plaintiff was not swayed by this deceptive behavior, confirmed that she was moving elsewhere, and ceased contact with Bayside Arbors.

14.    On February 27, 2025—the same day she would have moved into the Apartment under the supposed lease with Bayside Arbors—Defendant NCS emailed Plaintiff a collections letter on behalf of Bayside Arbors claiming that she owed $23,988.00, which totaled 12 months' rent at the supposed rate of $1,999.00 a month.

15.    As stunning as this was, Plaintiff was more shocked when she went to the Apartment in March of 2025 and saw that someone else was already living in the Apartment.  For at least a substantial period of time, and upon information and belief, since March 1, 2025, there has been someone else renting the Apartment in question. In other words, Bayside Arbors, through Defendant NCS, was

attempting to double dip by collecting rent from a tenant in the Apartment while at the same time seeking a full year of rent from Plaintiff.

16.    Under Florida Statutes Section § 83.595, if a landlord retakes possession of a leased premises after a tenant abandons or surrenders it, the landlord may either take the premises for its own account, which "terminat[es] any further liability of the tenant," hold the lessee liable for the rent as it comes due, or must use good-faith efforts to relet the premises and "any rent received by the landlord as a result of the reletting must be deducted from the balance of rent due from the tenant."

17.    Yet despite Bayside Arbors immediately finding a new tenant for the Apartment, Defendant NCS started reporting a full years' rent, with no deduction for the rent being paid by the new tenant, to the nationwide consumer reporting agencies TransUnion LLC ("TransUnion") and Defendants Experian and Equifax (together with TransUnion, the "CRAs"), who started reporting the false amount on Plaintiff's consumer reports.

18.    Plaintiff sent several dispute letters to each of the CRAs explaining why she did not owe the alleged debt. In her dispute letters, Plaintiff provided Defendants NCS, Experian and Equifax, as well as TransUnion, with all the information they would need to readily see that the alleged debt was false.  Indeed,

TransUnion removed the false information from Plaintiff's credit report in response to her dispute letters to it, and is not a defendant in this case.

19. In contrast, Defendants Experian, Equifax and NCS failed to conduct reasonable investigations into Plaintiff's dispute letters. As a result of the failure to conduct a reasonable investigation, the NCS trade line continues to appear on consumer reports provided by Defendants Experian and Equifax, Defendants continue to report a false delinquent debt, and that false reporting continues to place Plaintiff's reputation in a false light because others have access to the false information.

20. On January 15, 2026, Plaintiff sent a final round of dispute letters to Defendants Experian and Equifax laying out everything that would be needed for the false debt to be removed from her reports. Those dispute letters read, in relevant part:

Dear Equifax,

I am writing to dispute the following information that appears on my Equifax consumer report.

There is an entry from National Credit Systems Inc with a balance of $23,988 for Bayside Arbors Apts. I do not owe that money. Bayside Arbors is saying I owe them for an apartment I never moved into, for a time when someone else is living in that apartment. Please remove this false debt from my report.

To explain what happened: on December 6, 2024 I went to Bayside Arbors to see about renting an apartment after my lease at my apartment at the time ended at the end of February of 2025. They had me fill out paperwork to see if I would be approved for an apartment starting at the end of February of 2025. I told them that I would pay an application fee and apply, but I was not yet ready to commit to moving in, and they told me that I wasn't doing so at that time. They also were aware that I was having vision problems at the time and I couldn't see what I was putting my name on. It turns out they had me write my name on a lease form with my application, which was not filled out at the time but they later filled it out.

When I found out that I had been approved, I asked about the floor plan for the apartment and some other questions about how much it would cost me to rent the apartment with utilities and how utilities would be billed. I never got enough information to feel comfortable agreeing to move in, and by December 26, 2024 I had informed Bayside Arbors by email that I was not going to take the apartment and would move elsewhere.

I never moved into the apartment I had supposedly agreed to rent – apartment 6-103. But Bayside Arbors had National Credit Systems start trying to collect $23,988, which is a full years' worth of rent for that apartment at $1,999.00 a month. While I shouldn't owe anything because Bayside Arbors engaged in fraud regarding the lease and knew that I wasn't agreeing to the lease, I especially don't owe $23,988 for that apartment, because I know that someone else moved into that apartment. I went over there in March of 2025 and the place had someone else living in the apartment that I'm being charged for despite never moving in! Under Florida Statutes Section 83.595 (2), the landlord can't get the full amount of rent that I would have been supposed to pay if it is renting the apartment to someone else.

**What You Can Do To Investigate This Dispute:**

1. Please ask Bayside Arbors if someone else has been living in Apartment 6-103 and why I would owe for it if someone has been living there.
2. Please ask Bayside Arbors whether the lease that I supposedly signed on December 6, 2024 was fully filled out when I supposedly signed it.
3. Please review the documents that I'm attaching.
4. If you need any more documents or information please contact me.

Please remove this false reporting from my credit reports.

21.    Yet again, Defendants failed to conduct reasonable investigations in response to Plaintiff's January 15, 2026 dispute letters, and the false information remained on her reports.

22.    After Plaintiff experienced the decline in her credit standing, and realized Defendants were going to continue to report the false derogatory

information about her even after she disputed the trade line, Plaintiff experienced bouts of emotional distress that included anxiety, frustration, knots in her stomach, and loss of sleep.

23. Since Plaintiff saw that her credit report had a false and inaccurate delinquency on it, she refrained from applying for credit for which she otherwise would have applied but for the false delinquency.

24. Further, Plaintiff found a house that she wished to purchase, but because of the false reporting on her credit reports, she was denied approval for a mortgage and is unable to purchase the home, including a denial by PNC Bank on March 26, 2026 that explicitly stated that the denial was due to the false delinquency on her credit reports.

25. Other businesses have seen and continue to see the false information on Plaintiff's credit reports. Further, the false information has signifyingly negatively impacted Plaintiff's credit scores based on reports from Defendants Experian and Equifax; in a February 24, 2026 credit score disclosure, Plaintiff's credit scores based on information from reports by Defendants Experian and Equifax were respectively 57 and 58 points lower than her score based on the TransUnion report, which did not have the false reporting.

26. After Defendants' refusal to remove the false information from her reports, Plaintiff has been left with no other recourse than to file the instant lawsuit.

## COUNT ONE – Violation of the Fair Credit Reporting Act – Failure to Conduct Reasonable Investigations Under 15 U.S.C. § 1681s-2(b)
### (Defendant NCS)

27. Plaintiff incorporates by reference the allegations in paragraphs 1 through 26 as if fully set forth herein.

28. The FCRA requires that a furnisher such as Defendant NCS, after receiving notice from a consumer reporting agency that a consumer disputes information that is being reported by that furnisher, conduct a reasonable investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the consumer reporting agency, and, if the investigation reveals that the information is incomplete, inaccurate or cannot be verified, to report those results to all other consumer reporting agencies to which the furnisher has provided the inaccurate information.

29. Plaintiff disputed the false information regarding her alleged debt on the Apartment with Defendants Experian and Equifax on multiple occasions.

30. Pursuant to the FCRA, Defendants Experian and Equifax each sent Plaintiff's disputes to the furnisher of the false information: Defendant NCS.

31.     Even after Plaintiff's disputes, which explained why she did not owe the debt and provided supporting documentation, Defendant NCS continued to report the inaccurate delinquency on Plaintiff's credit reports.

32.     Indeed, Defendant NCS continues to report that Plaintiff owes to Defendants Experian and Equifax.

33.     15 U.S.C. § 1681s-2 prohibits furnishers from reporting inaccurate information, and sets forth the furnisher's duty to investigate the completeness and accuracy of the information reported when the furnisher receives a dispute from a consumer.

34.     After receiving notice by Defendants Experian and Equifax, as required by the FCRA, Defendant NCS engaged in conduct that violates 15 U.S.C. § 1681s-2(b), by:

a.     Willfully failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

b.     Willfully failing to report the results of investigations to Defendants Experian and Equifax;

c.     Willfully failing to report an accurate status of the inaccurate information to Defendants Experian and Equifax;

11

d.     Willfully failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

e.     Willfully continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to Defendants Experian and Equifax; and

f.     Willfully failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(a), (b).

35.     In the alternative, the above-described violations were negligent.

36.     Defendant NCS's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages, and harm to Plaintiff that are described above.

**COUNT TWO – Violation of the Fair Credit Reporting Act – Failure to Investigate**
**(Defendants Experian and Equifax)**

37.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 26 as if fully set forth herein.

38.     The FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a CRA is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed

12

information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

39. The FCRA further requires the CRA, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the CRA to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A). In conducting its reinvestigation of disputed information in a consumer report, the CRA is required to "review and consider all relevant information submitted by the consumer." *Id.*

40. Defendants Experian and Equifax failed to conduct reasonable reinvestigations of the inaccuracies that the Plaintiff disputed.

41. Defendants Experian and Equifax failed to review and consider all relevant information submitted by Plaintiff.

42. Defendants Experian and Equifax's failures to conduct reasonable reinvestigations were willful under the FCRA, as Defendants Experian and Equifax recklessly disregarded their obligations to conduct reasonable reinvestigations and consider the documentation provided by Plaintiff.

43. In the alternative, Defendants' failures were negligent.

44. As a direct and proximate result of the above-described violations of § 1681i of the FCRA, Plaintiff has sustained damages.

**COUNT THREE – Violation of the Fair Credit Reporting Act – Failure to Maintain Reasonable Procedures**
**(Defendants Experian and Equifax)**

45.      Plaintiff incorporates by reference the allegations in paragraphs 1 through 26 as if fully set forth herein.

46.      Despite receiving complaints and disputes from Plaintiff, Defendants Experian and Equifax failed to correct the disputed erroneous information.

47.      Defendants Experian and Equifax failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information, and file, in violation of 15 U.S.C. § 1681e(b). The basis of this allegation is the fact that Plaintiff gave Defendants Experian and Equifax proof that Defendant NCS was reporting inaccurate information, yet Defendants Experian and Equifax continued to report the false debt.

48.      As a direct and proximate result of the above-described violations of § 1681e(b) of the FCRA, Plaintiff has sustained damages.

**COUNT FOUR – Violation of the Fair Debt Collection Practices Act**
**(Defendant NCS)**

49.      Plaintiff incorporates by reference the allegations in paragraphs 1 through 26 as if fully set forth herein.

50.      Defendant NCS is a "debt collector" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a)(6) (the "FDCPA").

51.    Defendant NCS is attempting to collect a debt that has no basis in contract or law from Plaintiff.

52.    15 U.S.C. § 1692e(2)(A) prohibits a debt collector from false representation of the character, amount, or legal status of any debt.

53.    Defendant NCS's consistent attempts to collect a false rent debt violate § 1692e(2)(A).

54.    On June 19, 2025, Defendant NCS sent Plaintiff a letter stating that she owed Bayside Arbors a balance of $23,988.00 and demanding payment.  Not only did Plaintiff not owe that alleged debt because she never agreed to rent the Apartment, and someone else had been renting the Apartment and paying regardless, but as of June 19, 2025, only a few months' rent would have been due for the Apartment, yet Defendant NCS was seeking a full year's worth of rent in violation of Florida Statutes Section § 83.595.

55.    As a proximate result of that June 19, 2025 letter, Plaintiff suffered concrete harm including emotional distress from seeing the massive alleged debt that she did not owe.

## CONCLUSION

WHEREFORE, Plaintiff prays that this Court:

A) Find in favor of Plaintiff in counts 1–4;

15

B) Award an amount of actual damages for each claim to be determined by a jury;

C) Award punitive damages at an amount to be determined by a jury for willful violations of the FCRA against Defendants;

D) Award the greater of $1,000 or actual damages against Defendant NCS under the FDCPA; and

E) Award attorney's fees and costs pursuant to the fee-shifting statutes in counts 1-4.

Respectfully Submitted,

/s/ Joseph Mack
Joseph S. Mack
The Law Offices of Joseph S. Mack
Florida Bar#: 1018630
joseph@macklawonline.com
Tel: (305) 767-2629
106 Pelican Rd.
Tavernier, FL 33070

/s/ Joseph Sternberg
Joseph M. Sternberg, Esq.
Landers & Sternberg PLLC
Florida Bar#: 122447
joseph@landersandsternberg.com
Tel: (407) 495 – 1893
100 East Pine Street, Ste 1
Orlando, FL 32801

*Attorneys for Plaintiff*

16

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Joseph Mack
Joseph S. Mack

## NOTICE OF LEAD COUNSEL DESIGNATION

Pursuant to Local Rule 2.02(a), Joseph Mack, of the Law Offices of Joseph S. Mack, is designated as Plaintiff's lead counsel in this matter.

Respectfully Submitted,

/s/ Joseph Mack
Joseph S. Mack