**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ELIZABETH PAULEY,

Plaintiff,

v. Case No. 8:26-cv-1320-KKM-NHA

NATIONAL CREDIT
SYSTEMS, INC., et al.,

Defendants.

---

**ORDER**

This action concerns allegations of inaccurate credit reports and improper debt collection stemming from a disputed apartment lease debt. Elizabeth Pauley sues Experian Information Solutions, Inc., Equifax Information Services, LLC, and National Credit Systems, Inc., under the Fair Credit Reporting Act (FCRA) for listing a $23,988 apartment-rent debt on Pauley's credit report that Pauley alleges she does not owe and National Credit under the Fair Debt Collection Practices Act (FDCPA) for sending her a debt-collection email stating that Pauley owed the same $23,988 debt. *See* Compl. (Doc. 1). Experian and Equifax jointly move to dismiss Pauley's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a FCRA claim against them. *See* Mot. to Dismiss (MTD) (Doc. 25); Motion to Join the MTD

(Doc. 26); Order Granting Motion to Join (Doc. 27). Pauley opposes. *See* MTD Resp. (Doc. 28). Experian and Equifax reply. *See* MTD Reply (Doc. 31). National Credit moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for failure to state a FCRA or FDCPA claim. *See* Mot. for J. on the Pleadings (MJP) (Doc. 39). Pauley opposes this motion too. *See* MJP Resp. (Doc. 47). After the defendants filed both motions, Pauley moved to amend her complaint. Mot. to Amend (Doc. 40). All defendants oppose amendment. *See* Mot. to Amend. Resp. (Doc. 44). As explained below, I grant the motion to dismiss and the motion for judgment on the pleadings as to Pauley's FCRA claims, but I deny the motion for judgment on the pleadings as to Pauley's FDCPA claim, and I grant Pauley leave to amend her complaint.

## I. BACKGROUND

This dispute stems from an apartment lease application process that unraveled. *See* Compl. ¶¶ 10–26.[1] On December 6, 2024, Pauley "visited the

---

[1] Although the parties attached documents that go beyond pleadings, I exercise my discretion and decline to consider anything beyond the four corners of the complaint. *See* FED. R. CIV. P. 12; *Smith v. Miami-Dade Cnty.*, 621 F. App'x 955, 960 n.2 (11th Cir. 2015) ("When ruling upon a motion to dismiss, a district court generally may not consider materials outside of the pleadings."); *CWI, Inc. v. LDRV Holdings Corp.*, No. 8:13-CV-93-T-35MAP, 2014 WL 12573016, at *9, n.8 (M.D. Fla. Mar. 26, 2014) (applying that same standard to rule on a motion for judgment on the pleadings); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (explaining that district courts "may," but need not, "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity").

leasing office at Bayside Arbors Apartments" to inquire about an apartment lease to start in February 2025. *Id.* ¶ 10. During that appointment, "Bayside Arbors had [Pauley] fill out an application," pay "an application fee," and write her name onto "a blank form lease." *Id.* That lease stated that Pauley would have the right to move into Bayside Arbors "[a]partment 6-103" beginning on February 27, 2025. *Id.* ¶¶ 11, 14. After expressing "discomfort" about signing these documents due to her "vision problems" and her outstanding concerns about "total monthly costs" if she rented the apartment, Bayside Arbors "assured" Pauley that she was "not committing" to the lease but was "just putting in a rental application." *Id.* ¶ 10. Pauley alleges that she "never agreed to move into" the apartment and thinks that Bayside Arbors "engaged in fraud" by "fill[ing] [the lease] out" at some point after she left that day. *Id.* at ¶¶ 1, 20. Later that same day, Bayside Arbors texted Pauley to inform her that the application was approved and that she could move into the apartment on February 27, 2025. *Id.* ¶ 11.

A few weeks later, Pauley changed course, telling Bayside Arbors that she would not be moving into [apartment 6-103] as "she was choosing to move elsewhere." *Id.* ¶ 12. In response, Bayside Arbors warned Pauley that she "had signed a lease" for apartment 6-103 and that "she was obligated to move in." *Id.* Pauley reiterated that "she was moving elsewhere" and cut-off contact with Bayside Arbors. *Id.* ¶ 13.

But on February 27, 2025, National Credit emailed Pauley a debt-collection letter on behalf of Bayside Arbors for $23,988, twelve months' worth of rent under the "supposed lease." *Id.* ¶ 14. In March 2025, after receiving that email, Pauley went to Bayside Arbors to investigate. *Id.* ¶ 15. While there, Pauley observed someone else living in apartment 6-103. *Id.* ¶ 15. Pauley believes that this person has rented the apartment since March 1, 2025, *see id.*, and that under Florida law, she cannot owe any rent for apartment 6-103 because it was re-rented for the same time as her "supposed lease." *Id.* ¶¶ 14–16.

At some point, National Credit reported the $23,988 debt for the Bayside Arbors lease to credit reporting agencies, including Experian and Equifax. *Id.* ¶ 17. Experian and Equifax listed that debt on Pauley's credit reports too. *Id.* Pauley sent letters to National Credit, Experian, and Equifax disputing the debt. *Id.* ¶ 18. And Experian and Equifax forwarded Pauley's dispute to National Credit. *Id.* ¶ 30. But the debt remains listed on Pauley's credit reports. *Id.* ¶¶ 19–21. In addition to experiencing emotional distress from receiving the debt-collection email, Pauley faced the denial of a home mortgage application with PNC Bank because the unpaid Bayside Arbors debt remained listed on her credit reports. *Id.* ¶¶ 22–25.

Pauley sues Experian and Equifax for damages under FCRA, claiming that both defendants failed to reasonably reinvestigate the accuracy of Pauley's

credit report and maintain reasonable procedures to ensure the accuracy of Pauley's credit report. *Id.* ¶¶ 37–48 (Counts II and III). Pauley also sues National Credit for damages under FCRA, claiming that National Credit failed to reasonably reinvestigate the accuracy of Pauley's credit report, and under the FDCPA, claiming that National Credit improperly attempted to collect a debt Pauley did not owe. *Id.* ¶¶ 27–36 (Count I); *Id.* ¶¶ 49–55 (Count IV).

## II. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When deciding whether to grant a motion to dismiss under 12(b)(6), the complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

## III. ANALYSIS

### A. FCRA Claims

"[T]o protect consumers" and to ensure efficient credit allocation through accurate credit reporting, *see Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1366 (11th Cir. 2024), Congress imposed liability on furnishers of consumer debt information and consumer credit reporting agencies that willfully or negligently violate FCRA's requirements. *See* 15 U.S.C. § 1681n (willful violations); 15 U.S.C. § 1681o (negligent violations); *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1217 (11th Cir. 2023) (A "consumer reporting agency" is a person or organization that assembles credit reports . . . , think [] Equifax [and] Experian."); *id.* ("'Furnishers,' on the other hand, are people or organizations that give consumer information (furnish it) to those reporting agencies," including "third-party debt collectors."). Pauley claims that Experian and Equifax (1) failed to conduct a reasonable reinvestigation of the Bayside Arbors debt to determine if the debt was accurate after Pauley disputed it under 15 U.S.C. § 1681i, (2) failed to maintain reasonable procedures to assure accurate credit reporting under 15 U.S.C. § 1681e(b), and (3) that National Credit failed to conduct a reasonable investigation under 15 U.S.C. § 1681S-2(b). In Pauley's view, she never agreed to rent the apartment, but even if she did, she no longer owed rent because under Section 83.595, Florida Statutes, Bayside Arbors elected to re-rent the apartment and thus

relieved her debt obligation. *See* MTD Resp. at 14–20. In the end, all Pauley's FCRA claims fail for the same reason: the inaccuracy Pauley claims is not "objectively and readily verifiable." *See Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 WL 1620921, at *3 (11th Cir. June 9, 2025) (citing *Holden*, 98 F.4th at 1368).

To state a claim for a violation of the FCRA, "a plaintiff must show at least two things: that a consumer report was inaccurate and that the inaccurate report caused him to suffer damages." *See Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020). To establish an inaccuracy under FCRA's "maximum possible accuracy" standard, as required to state a claim under 15 U.S.C. § 1681i, 15 U.S.C. § 1681e(b), or 15 U.S.C. § 1681S-2(b), the plaintiff must plausibly allege that "the information in dispute is objectively and readily verifiable" upon investigation by the furnisher or the credit reporting agency. *Holden*, 98 F.4th at 1367–69 (applying this requirement to a 15 U.S.C. § 1681S-2 claim); *Rozov*, 2025 WL 1620921, at *3 ("[T]o succeed on their [Sections] 1681e(b) and 1681i claims, Plaintiffs must show that the . . . consumer report contained (1) false or misleading information that was (2) objectively and readily verifiable.").[2]

---

[2] Although Experian and Equifax argue that this test does not apply to credit reporting agencies, *see* MTD at 6, the logic of *Holden*, which applied the objectively and readily verifiable standard to furnishers because FCRA's text requires furnishers to accurately report, equally applies to the like textual requirement that credit

"'[P]urely factual or transcription errors' or a 'straightforward application of law to facts' constitute 'objectively and readily verifiable information.'" *Rozov*, 2025 WL 1620921, at *2 (citing *Holden*, 98 F.4th at 1368–69). But "allegedly inaccurate information that 'stems from a . . . dispute without a straightforward answer' does not." *Id.* (holding that disputes over allegedly fraudulent transactions "are often complex" and thus are usually not readily verifiable); *Holden*, 98 F.4th at 1368 (holding that a "contract dispute" that lacked "a straightforward application of law to facts" was not readily verifiable); *see also Ward v. Nat'l Credit Sys., Inc.*, 182 F.4th 918, 933 (10th Cir. 2026) (embracing *Holden*'s test and holding that "dispute[s] that involve[] complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform [are] not objectively and readily verifiable").

Pauley's FCRA claims rest on a contractual lease dispute that is far from straightforward or readily verifiable. Each claim hinges on the same alleged inaccuracy—that Experian, Equifax, and National Credit each failed to properly handle "the false information regarding [Pauley's] alleged," but disputed, Bayside Arbors lease debt. *See* Compl. ¶¶ 29, 40, 46. But whether Pauley never owed that lease debt, as Pauley claims because Bayside Arbors

---

reporting agencies take steps to maintain accurate credit reports. *See Rozov*, 2025 WL 1620921, at *3 (applying *Holden* to credit reporting agencies).

fraudulently placed Pauley's signature on that lease, is not something that the defendants could *readily* determine. *See Buser v. Experian Info. Sols., Inc.*, No. 8:23-CV-1881-TPB-NHA, 2025 WL 90069, at *3 (M.D. Fla. Jan. 14, 2025) (explaining that debt disputes over forged signatures "are often complicated" and thus not cognizable FCRA claims under *Holden*); *Rozov*, 2025 WL 1620921, at *3 (explaining that when a credit reporting agency would need to sort out the "veracity" of the consumer's story to determine what happened, that undercuts that the disputed information is readily and objectively verifiable). In other words, determining if fraud in contract formation occurred is no "straightforward" question that the defendants could have directly resolved. *See Holden*, 98 F.4th at 1368.

Beyond that, whether Section 83.595, Florida Statutes would relieve any rent that Pauley would owe fairs no better under *Holden*'s readily and objectively verifiable standard, contrary to Pauley's argument. *See* MTD Resp. at 12–15. To start, Section 83.595 requires that a valid "rental agreement" exist between the landlord and the tenant and either that the tenant has either "surrendered" or "abandoned" the unit or that the landlord has a "writ of possession" for the unit. So as a threshold matter, any investigation into Pauley's rent obligations under Section 83.595 would present the same uncertainty that the allegedly fraudulent contract formation presented plus an investigation into the circumstances following breach of the

rental agreement. More, even if the contract's formation and Section 83.595's preconditions raised straightforward questions, how Section 83.595 would apply would be far from readily apparent absent extensive discovery into the contract's terms and the landlord's actions—i.e., what were the lease agreements terms, did the landlord re-rent the unit, etc.—because Section 83.595 provides four potential remedies with different factual preconditions that a landlord can choose between when a tenant breaches a lease, one of which could result in the tenant still being responsible for the lease's full value. Together, this all supports that any relief of Pauley's lease obligation to Bayshore Arbors under Section 83.595 is not a "determination" that the defendants "could have easily made" and is thus "not the type of 'straightforward application of law to facts' that [the defendants] could objectively and readily verify." *See Rozov*, 2025 WL 1620921, at *3 (quoting *Holden*, 98 F.4th at 1368); *see also Ward*, 182 F.4th at 933 ("A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't [readily and objectively verifiable]." (quotation omitted)). And because the information concerning this debt "fails to meet that standard," Pauley lacks "actionable FCRA claims against" the defendants, *see*

*Holden*, 98 F.4th at 1369,[3] and I dismiss without prejudice Counts I, II, and III of the complaint for failure to state a claim upon which relief can be granted.

**B. FDCPA Claim**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1284 (11th Cir. 2025) (quoting 15 U.S.C. § 1692(e)). Under the statute, "[d]ebt collectors are categorically prohibited from making false or misleading representations . . . in connection with the collection of any debt." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1302 (11th Cir. 2015). "[The FDCPA] authorizes private lawsuits and weighty fines designed to deter wayward collection practices." *Glover*, 127 F.4th at 1284 (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017)). Debt collectors who violate the statute's provisions are liable to those they harm. *See id.* at 1285.

"To state a claim under FDCPA, [Pauley] must allege that (1) [she] has been the object of collection activity arising from consumer debt, (2) [National

[3] Although the Eleventh Circuit has alluded, without deciding, that a plaintiff can more easily establish that the information supporting a debt is readily and objectively verifiable against a furnisher, *see Rozov*, 2025 WL 1620921, at *3, I conclude that Pauley has not plausibly alleged an actionable inaccuracy against National Credit, even under such a lighter standard. *See Holden*, 98 F.4th at 1368; *Rozov*, 2025 WL 1620921, at *3.

Credit] is a debt collector as defined by the FDCPA, and (3) [National Credit] has engaged in an act or omission prohibited by the FDCPA." *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1243 (M.D. Fla. 2019) (citation modified). Pauley alleges that she was the object of prohibited collection activity under 15 U.S.C. § 1692e(2)(A) when National Credit, acting as a debt collector, tried to collect a $23,988 debt that Pauley did not owe. *See* Compl. ¶¶ 49–55. National Credit does not dispute that it is a debt collector or that Pauley has been the object of a collection activity arising from consumer debt but denies that it has violated 15 U.S.C. § 1692e(2)(A). *See* MJP at 15–18.

Under 15 U.S.C. § 1692e, debt collectors are prohibited from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of . . . the character, amount, or legal status of any debt." In other words, an alleged "false representation" of a debt's existence or amount, on its own, establishes a plausible FDCPA claim. *See Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012); *see also Roberto v. Addison Place Apartments Prop. Owner LLC*, No. 23-61579-CIV, 2024 WL 6977135, at *5 (S.D. Fla. Oct. 24, 2024) ("Where a debt collector attempts to collect a debt that is not owed, such an attempt constitutes a 'false representation' . . . in violation of 1692e.").

Pauley's FDCPA claim against National Credit, as alleged, meets that standard. *See* Compl. ¶¶ 49–55. Pauley alleges that she never owed any debt

to Bay Arbors—or, at least, that she did not owe the full amount of the $23,988 debt—but that National Credit stated anyway in a debt collection email that she owed $23,988. *See id.* Because the FDCPA generally imposes "strict liability," *see LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010), that statutory violation sufficiently pleads a plausible 15 U.S.C. § 1692e violation.

To try undermining that conclusion, National Credit argues that an allegedly false representation, without additional allegations of some "unlawful collection practice[]" like "harass[ing]" conduct, fails to establish a 15 U.S.C. § 1692e violation. *See* MJP at 16. But that argument fails as it misunderstands 15 U.S.C. § 1692e's text and binding Eleventh Circuit precedent. The FDCPA requires only a "false representation"—not a false representation plus incivility—to establish a 15 U.S.C. § 1692e claim, *see Bourff*, 674 F.3d at 1241, contrary to the out-of-circuit precedent and the single in-circuit trial court decision that National Credit points to for support of this heightened standard. *See* MJP at 17–18 (collecting non-binding decisions that require more than just a false representation). Of course, National Credit could raise as an affirmative defense that this alleged false representation was either "not intentional" or "resulted from a bona fide error notwithstanding" National Credit's reasonable procedures, *see* 15 U.S.C. § 1692k(c), but National Credit raises no such argument that this liability bar applies here. So, because Pauley

pleads a plausible, prima facie, FDCPA claim, I deny National Credit's motion for judgment on the pleadings as to Count IV.

## IV. CONCLUSION

As explained above, I dismiss without prejudice Pauley's FCRA claims: Counts I, II, and III of the complaint. But I conclude that Pauley pleads a plausible FDCPA claim in Count IV. At this point, however, it is not apparent that affording Pauley the chance to amend her complaint would prove futile, *see Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004), so I permit Pauley leave to amend her complaint.

Accordingly, the following is **ORDERED**:

1. Experian's and Equifax's joint Motion to Dismiss (Doc. 25) is **GRANTED**. Counts II and III of the Complaint are **DISMISSED WITHOUT PREJUDICE**.

2. National Credit's Motion for Judgment on the Pleadings (Doc. 39) is **GRANTED IN PART** and **DENIED IN PART**. Count I of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. Elizabeth Pauley's Motion to Amend the Complaint is **GRANTED**. No later than **December 9, 2026**, Pauley may file an amended complaint. Pauley's amended complaint may not add new claims against Experian, Equifax, or National Credit. If Pauley fails to file an amended complaint, Experian and Equifax will be

terminated from the action, and the remaining count will proceed against National Credit.

4. Any remaining defendants must file any response to any amended complaint no later than **December 23, 2026**.

**ORDERED** in Tampa, Florida, November 25, 2026.

Kathryn Kimball Mizelle
United States District Judge